**United States District Court**
**Northern District of Illinois**

| | | |
|---|---|---|
| TIMOTHY FREEHAN, *et. al.*,<br>*Plaintiffs,*<br><br>v.<br><br>CYNTHIA BERG, *et al.*<br>*Defendants,*<br><br>WINE & SPIRITS DISTRIBUTORS OF ILLINOIS<br>*Intervening defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:22-cv-04956<br>Hon. Jeremy C. Daniel, District Judge<br>Hon. Young B. Kim, Magistrate Judge |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I. Summary of argument

Plaintiffs challenge the constitutionality of the Illinois law that prohibits out-of-state retailers from selling wine online and shipping it to Illinois consumers but allows in-state retailers to do so. Illinois issues the necessary licenses only to retailers physically located in the state and will not issue them to retailers outside the state. Whether this difference in treatment is unconstitutional depends on the interplay between the Commerce Clause,[1] which prohibits discrimination against interstate commerce, and § 2 of the Twenty-first Amendment,[2] which gives states broad latitude to regulate the sale of alcohol within their borders.

The proper balance between those two provisions has been set in three cases: *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504 (2019); *Granholm v. Heald,* 544 U.S. 460 (2005),

[1] "The Congress shall have the power [to] regulate commerce ...among the several states." U.S. CONST., ART. I, § 8, cl. 3.

[2] "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. CONST., AMEND. XXI, §2.

and *Lebamoff v. Rauner*, 909 F.3d 847 (7th Cir. 2010).[3] They hold that despite the apparent broad grant of authority given to states by the Twenty-first Amendment, "state regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause." *Granholm,* 544 U.S. at 487; *Tenn. Wine,* 588 U.S. at 533; *Lebamoff,* 909 F.3d at 854. Constitutionality is determined by "a two-step inquiry: (1) does the state law violate the Commerce Clause, and if so (2) does the Twenty-first Amendment save the otherwise impermissible law? *Id.* at 852. In order for the Amendment to save a discriminatory law, the State must "show that the differential treatment is *necessitated* by permissible Twenty-first Amendment interests." *Id.* at 856 (emphasis in original).

The Seventh Circuit has already ruled that this law is facially discriminatory, *Lebamoff*, 909 F.3d at 852-53, and the State admits that an Illinois retailer can obtain a license to sell wine online and ship it to consumers but an out-of-state retailer cannot. Stmt. of Facts ¶¶ 20-22. Therefore, the case turns on step two. Can the State show that the differential treatment is necessitated by permissible Twenty-first Amendment interests? The Amendment protects interests that directly "address alcohol-related public health and safety issues," *Tenn. Wine,* 588 U.S. at 539, but does not protect bureaucratic interests such as facilitating orderly market conditions and ensuring regulatory accountability. *Granholm*, 544 U.S. at 492. To establish reasonable necessity, the State must present "'concrete evidence' showing that the [law] actually promotes public health or safety [and] that nondiscriminatory alternatives would be insufficient to further those interests." *Tenn. Wine*, 88 U.S. at 540; *Granholm,* 544 U.S. at 489.

The State admitted in discovery that it has no concrete facts or data to show that shipments of

[3]*Lebamoff* involved a challenge to the same law as the present case, but never reached a final decision on the merits. The case was mooted on remand when Lebamoff Enterprises went out of business and the consumer plaintiff developed dementia and could not continue. ECF Nos 166-167, Case No. 1:16-cv-8607 (N.D. Ill. 2021).

wine from out-of-state retailers pose any kind of public-safety threat, Stmt. of Facts ¶¶ 40, 43, and their expert, Dr. Kerr, admits no such evidence exists. Stmt. of Facts ¶ 44. Indeed, what little evidence there is shows the opposite -- that interstate retail sales have caused no public health or safety problems in the fourteen states that allow them. Those states do not have higher rates of consumption, more youth access or other alcohol-related problems, and no unsafe products are being shipped. Stmt. of Facts ¶¶ 37-39, 43. Banning sales by out-of-state retailers cannot advance public health and safety when they pose no threat to begin with.

Illinois already allows out-of-state wineries to ship to consumers and has not experienced any problems. Stmt. of Facts ¶ 46. Fourteen states allow interstate shipping from retailers without problems. Stmt. of Facts ¶ 43. They safely monitor and regulate interstate wine shipments through a permit system in which out-of-state shippers consent to jurisdiction, limit sales volume, submit reports and taxes, allow audits, and use common carriers that verify age on delivery. Stmt. of Facts ¶ 47. The Supreme Court and the National Conference of State Legislatures have endorsed the permit system as a reasonable nondiscriminatory alternative to a total ban. *Granholm,* 544 U.S. at 491-92. The State has no concrete evidence to show that the permit system would suddenly become ineffective in this one situation.

The Twenty-first Amendment cannot save a discriminatory law when the record is "devoid of any 'concrete evidence' showing that the [law] actually promotes public health or safety [or] that nondiscriminatory alternatives would be insufficient to further those interests." *Tenn. Wine,* 588 U.S. at 540. Illinois' ban on interstate retail wine shipments is unconstitutional.

**II. Jurisdiction**

Plaintiffs brought this action under 42 U.S.C. § 1983, alleging that provisions in the Illinois Liquor Control Code violate the Commerce Clause. This Court has jurisdiction under 28 U.S.C. §§

1331 and 1343(a)(3), which confer jurisdiction on district courts to hear suits alleging the violation of Constitutional rights. The defendants are state officials responsible for enforcing the laws at issue, Stmt. of Facts ¶ 19, and are sued only for declarative and injunctive relief, so they are not entitled to Eleventh Amendment immunity under. *Ex Parte Young,* 209 U.S. 123 (1908).

**III. Standing**

In every case, Plaintiffs must establish standing: (1) injury, (2) causation and (3) redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Where a plaintiff is the object of a restrictive regulation and the defendant is the official responsible for its enforcement, as in this case, "there is ordinarily little question" that the plaintiff has standing to challenge that regulation. *Id.* at 561-62; *FDA v. Alliance for Hippocratic Med.,* 602 U.S. 367, 380-81 (2024). There is even less question here because the Seventh Circuit has previously held that consumers have standing to challenge a state law that prohibits them from having wine shipped from an out-of-state seller, *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 849-50 (7th Cir. 2000). Only one plaintiff needs standing to confer jurisdiction. *Massachusetts v. EPA,* 549 U.S. 497, 518 (2007)

The Plaintiffs are being denied their constitutional right to engage in interstate commerce, *GMC v. Tracy*, 519 U.S. 278, 286 (1997) and "[t]he loss of [constitutional rights], for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 373 (1976). Full Pull Wines loses sales and the opportunity to compete for business in Illinois. Stmt. of Facts ¶ 15. The consumer Plaintiffs are being prevented from obtaining the wine they want. Stmt. of Facts ¶ 3. These injuries are caused by the laws making interstate sales unlawful, Stmt. of Facts ¶¶ 3, 15. 32, and will be redressed if the Defendants are enjoined from enforcing them. Full Pull Wines has said it will then obtain any necessary licenses and sell wine to Illinois consumers, Stmt. of Facts ¶¶ 16-18, and the consumer Plaintiffs have said they will purchase from out-of-state retailers. Stmt. of

Facts ¶¶ 6-8. No independent action of a third party is involved, so the Plaintiffs have standing. *See Murthy v. Missouri,* 144 S.Ct. 1972, 1986 (2024).

**IV. The Illinois law that prohibits out-of-state retailers from selling wine online and shipping it to consumers, but allows in-state retailers to do so, is unconstitutional**.

**A. The laws being challenged**

Plaintiffs challenge one discriminatory feature of Illinois' alcohol laws. Illinois allows in-state retailers to sell wine online and ship it to consumers but prohibits out-of-state retailers from doing so. Retailers physically located in Illinois may obtain off-premises retailer's licenses which allow them to engage in online sales and ship wine statewide by common carrier. 235 ILCS 5/5-1(d).[4] In order to obtain this license, the retailer must first have obtained a local license for the same premises, 235 ILCS 5/3-14,[5] and a local license is available only for premises in Illinois. 235 ILCS 5/6-2(a).[6] Retailers whose premises are outside Illinois cannot get a local retailer license and therefore cannot get the Illinois retailer's license which is required to be able to sell and ship wine to consumers.

---

[4]"A retailer's license shall allow the licensee to sell and offer for sale at retail, only in the premises specified in the license, alcoholic liquor for use or consumption, but not for resale in any form. Except as provided in Section 6-16 [sales to minors], 6-29 or 6-29.1 [sales by wineris], nothing in this Act shall deny, limit, remove, or restrict the ability of a holder of a retailer's license to transfer or ship alcoholic liquor to the purchaser for use or consumption subject to any applicable local law or ordinance. For the purposes of this Section, "shipping" means the movement of alcoholic liquor from a licensed retailer to a consumer via a common carrier..."

[5]"Nothing contained in this Act shall, however, be construed to permit the State Commission to issue any license ... unless the person applying for such license shall have obtained a local license for the same premises. ... When such person has obtained a local license and has made application to the State Commission in conformity with this Act and paid the license fee provided, it shall be the duty of the State Commission to issue a retailer's license to him..."

[6]"(a) Except as otherwise provided in subsection (b) of this Section and in paragraph (1) of subsection (a) of Section 3-12, no license of any kind issued by the State Commission or any local commission shall be issued to: (1) A person who is not a resident of any city, village or county in which the premises covered by the license are located."

Answer ¶¶ 22-23 (ECF No. 43). Without the Illinois off-premises retailer's license, an out-of-state retailer is prohibited from selling and shipping wine directly to consumers, 235 ILCS 5/6-29.1(b),[7] and Illinois consumers are prohibited from having more than one gallon of wine per year shipped to them from outside the state. 11 Ill. Adm. Code 100.480.[8] The State has agreed that this is a correct description of the law. Stmt. of Facts ¶¶ 20-22.

It is also important to identify what is *not* being challenged. Many states, including Illinois, channel alcohol sales through a "three-tier system" which separates producers, wholesalers and retailers into distinct tiers and requires separate licenses for each. Many of those licenses are exclusive, meaning that the holder may operate in only one tier, in order to prevent "tied houses" where a producer controlled (and could manipulate) retail sales. *Lebamoff*, 909 F.3d at 850. The Supreme Court has said that a state's decision to adopt a the three-tier system, like other ways of regulating alcohol, is presumptively legitimate under the Twenty-first Amendment. *Granholm*, 544 U.S. at 489. But the Court has also cautioned that "[a]lthough *Granholm* spoke approvingly of that basic model, it did not suggest that § 2 sanctions every discriminatory feature that a State may incorporate into its three-tiered scheme. *Tenn. Wine,* 588 U.S. at 535. Courts must "analyze [each] provision on its own." *Id.* at 539. Each discriminatory feature must be independently justified with

---

[7]"Any person ... distributing, or selling alcoholic liquor who knowingly ships or transports or causes the shipping or transportation of any alcoholic liquor from a point outside this State to a person in this State who does not hold a manufacturer's, distributor's, importing distributor's, or non-resident dealer's license issued by the Liquor Control Commission, other than a shipment of sacramental wine to a bona fide religious organization, a shipment authorized by Section 6-29 [or] subparagraph (17) of Section 3-12 [shipments by wineries] is in violation of this Act."

[8]"A person is permitted to import alcoholic liquor into this State for his or her personal and non-commercial use without first obtaining a license to import under the following conditions ... A) The total volume to be imported per year is less than one gallon."

concrete evidence that it is reasonable necessary to protect public health or safety. *Lebamoff*, 909 F.3d at 855-56.

Plaintiffs' complaint is consistent with these guidelines. We are not challenging the entire three-tier system, nor Illinois' basic right to regulate alcohol, require licenses, or insist that out-of-state retailers consent to its jurisdiction, obtain licenses, file sales reports and pay taxes. We challenge one discriminatory feature of Illinois' laws -- the rule that only retailers in Illinois may sell wine online and ship it to consumers.

**B. The framework for analyzing the constitutionality of a state liquor law**

Although a state liquor law is generally entitled to a presumption of constitutionality, "[i]t does not at all follow that every statute enacted ostensibly for the promotion of the public health, the public morals, or the public safety is to be accepted as a legitimate exertion of" State authority. *Tenn. Wine,* 588 U.S. at 538 (quoting *Mugler v. Kansas,* 123 U.S. 623, 661 (1887). The states' regulatory authority "is limited by the nondiscrimination principle of the Commerce Clause." *Granholm,* 544 U.S. at 487; *Tenn. Wine,* 588 U.S. at 533; *Lebamoff,* 909 F.3d at 854. When a liquor law discriminates against out-of-state interests, the presumption of constitutionality vanishes, and it is incumbent on the Court to carefully scrutinize the State's purported justification to see whether the State has "shown] that the differential treatment is necessitated by permissible Twenty-first Amendment interests." *Lebamoff,* 909 F.3d at 856. This is "a two-step inquiry: (1) does the state law violate the Commerce Clause, and if so (2) does the Twenty-first Amendment save the otherwise impermissible law?" *Id.* at 852. At each step, concrete evidence is required and "speculation' or 'unsupported assertions' are insufficient to sustain a law that would otherwise violate the Commerce Clause." *Tenn. Wine*, 588 U.S. at 539.

**C. The ban on interstate wine sales is discriminatory**.

The Seventh Circuit has already ruled that the Illinois law that bans out-of-state retailers from selling wine online and shipping it to consumers is discriminatory.

> Limiting licenses to in-state storefronts might make sense if all sales had to be on an in-person basis. The great majority of out-of-state retailers would have no use for such a license, and the failure of the state to offer it would raise no eyebrows. But once the license allows a store to ship product anywhere within the state, refusing to extend that privilege to out-of-state businesses is facially discriminatory

*Lebamoff*, 909 F.3d at 852-53.

Discrimination for Commerce Clause purposes simply means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter" and/or "deprives citizens of their right to have access to the markets of other States on equal terms." *Granholm,* 544 U.S. at 572-73 (internal citations omitted). The Illinois ban on interstate retail wine shipments is a textbook example. In-state retailers benefit by having exclusive privileges to sell wine online and ship it to consumers, which is a valuable commercial asset. Stmt. of Facts. ¶33. Out-of-state retailers are harmed by losing sales and business opportunities. Facts ¶ 15. Illinois consumers are denied access to retailers in other states, Facts ¶¶ 4-5, 24, including those who sell wines not available in Illinois. Facts ¶¶ 26-32. "[P]rotecting [local firms] from the rigors of interstate competition is the hallmark of the economic protectionism that the Commerce Clause prohibits." *West Lynn Creamery v. Healy*, 512 U.S. 186, 205 (1994).

If the product were anything other than alcohol, the law could be easily struck down because discrimination against interstate commerce is a "virtually *per se"* violation of the Commerce Clause. *Granholm,* 544 U.S. at 487. But when alcohol is involved, the Twenty-first Amendment is also implicated, so courts "engage in a different inquiry" than they would if it were a pure Commerce Clause case. *Tenn. Wine,* 588 U.S. ay 539. This does not mean that discriminatory liquor laws are

immune from scrutiny. *Tenn. Wine*, 588 U.S. at 532-33; *Healy v. Beer Inst.*, 491 U.S. 324, 344 (1989) (Scalia, J., concurring) (a liquor law's "discriminatory character eliminates the immunity afforded by the Twenty-first Amendment"). It means we move to the second step of the analysis -- has the State justified the measure by proving with concrete evidence that the differential treatment is reasonably necessary to address alcohol-related public health or safety issues? *Tenn. Wine*, 588 U.S. at 533, 539; *Lebamoff*, 909 F.3d at 856.

**D. The State has not met its burden to show that banning interstate wine sales is reasonably necessary to protect public health or safety**

Step two of the analysis asks whether the Twenty-first Amendment can save an otherwise impermissible law. *Lebamoff*, 909 F.3d at 852. The Amendment does not do so automatically. It "gives each State leeway in choosing the alcohol-related public health and safety measures that its citizens find desirable [but] is not a license to impose all manner of protectionist restrictions on commerce in alcoholic beverages." *Tenn. Wine*, 588 U.S. at 510. "[T]he Court has repeatedly declined to read § 2 as allowing the States to violate the "nondiscrimination principle" of the Commerce Clause. *Id.* at 533. The State's regulatory leeway "is not boundless" and "states may not infringe upon other provisions of the Constitution under the guise of exercising their Twenty-first Amendment powers." *Lebamoff*, 909 F.3d at 849.

In order to justify a discriminatory liquor law, the State must prove two things:

1) The law "actually promotes public health or safety,"*Tenn. Wine*, 588 U.S. at 540, not just that it theoretically might do so; and

2) "[N]ondiscriminatory alternatives would be insufficient to further those interests." *Id.*

"[E]vidence is crucial to evaluate the constitutionality of the statute," *Lebamoff,* 909 F.3d at 856, and the burden is on the State. *Granholm,* 544 U.S. at 492. The State must present enough admissible

and persuasive evidence to show that the "*predominant effect* of the law is ... the protection of public health or safety," not protectionism. *Tenn. Wine*, 588 at 539-40 (emphasis added).[9] If a restriction has only an attenuated or speculative relationship to public health, it is not shielded by the Twenty-first Amendment. *Id.* In a case like this one, where the protectionist effect is strong and definite, the State's evidence of the need to discriminate must be equally strong. The State cannot meet this burden.

First, the evidence shows that banning interstate retail wine shipping does not genuinely advance the state's interest in protecting public health or safety because such shipments pose no threat to begin with. Interstate wine shipping has become ubiquitous around the country[10] and has not caused any problems anywhere.

- Forty-five states (including Illinois) allow out-of-state wineries to sell and ship wine directly to consumers and have not reported any public health or safety problems caused by interstate sales. The defendants conceded in discovery that they are unaware of any actual incidents in the past three years in which wine shipped to a consumer by a licensed winery caused or was a significant factor in an alcohol-related public health or safety issue, including traffic accidents, crime, workplace absenteeism, or domestic violence. Stmt. of Facts ¶ 42.
- Fourteen states have allowed out-of-state retailers to sell and ship wine directly to consumers over the past fifteen years and they report no public health or safety problems. Stmt. of Facts ¶ 43. The defendants conceded in discovery that they had no evidence that interstate retail

---

[9] This is analogous to a preponderance of evidence standard. Predominance and preponderance mean the same thing. AM. HERITAGE DICTIONARY 1388 (5th ed. 2011).

[10] Just this week, USA Today began offering a wine club that will ship a case of wine to your door every month. USA Today at 8C (Nov. 7. 2024).

wine shipments has actually caused any alcohol-related problems in those states unless their expert, William Kerr, could provide it. Id. But Kerr, too, had no evidence, data or studies showing that interstate retail wine shipments have caused any alcohol-related problems anywhere. Indeed, he has admitted that there are no actual data on the impact of direct wine shipping on alcohol-related problems. Stmt. of Facts ¶ 44.

- The Illinois General Assembly has expressed concern that online sales could lead to more youth access to liquor, 235 ILCS 5/6-29.1(b), but the evidence shows the availability of online ordering has not increased youth consumption. Stmt. of Facts ¶¶ 38-39. Illinois already allows online ordering from in-state retailers and out-of-state wineries and admits there is no evidence of any increased youth access. Facts ¶ 40.
- The Illinois General Assembly has also expressed concern that online sales could threaten State revenue collections, 235 ILCS 5/6-29.1(b), but the evidence shows otherwise. Other states that require out-of-state retailers to pay taxes report no problems collecting them. Stmt. of Facts ¶ 47. The one state to study the issue (Maryland) found the exact opposite. Licensing interstate wine sales increased tax revenue as sellers who previously shipped wine illegally without paying taxes were brought into the system. Facts. ¶ 48.
- Data from the National Institutes of Health show that states that allow interstate retail wine sales do not have higher rates of wine consumption. Stmt. of Facts ¶ 37. This is not surprising because buying wine online and paying shipping costs is usually more expensive than buying it locally. Facts ¶ 35. Wine is readily available at supermarkets in Illinois for less than $5.00 a bottle, so anyone motivated to drink more because of low prices already has access to cheap wine.

- Data from federal agencies show that interstate retail wine shipping has not caused any significant alcohol-related public health or safety problems in the fourteen states that have been allowing it over the past fifteen years. Those states do not have higher rates of problematic behavior associated with alcohol such as traffic fatalities, aggravated assaults, or domestic violence. Stmt. of Facts ¶ 37
- Regulators from states that allow interstate retail wine sales have reported no alcohol-related problems associated with such sales nor any incidents of unsafe wine being shipped. Stmt. of Facts ¶¶ 37, 43.
- Although defense expert Kerr predicts that higher excise tax rates will theoretically reduce consumption, the actual data show no correlation between excise tax rates and wine consumption rates. Higher prices cause consumers to switch to less expensive products, not to reduce consumption. Stmt. of Facts ¶ 50.
- Although defense expert Kerr predicts that allowing direct shipping of wine will cause higher rates of risky sexual behavior among young people, leading to more sexually transmitted diseases and teen pregnancies, the data show no correlation between direct shipping and STD rates or teen pregnancies. Stmt. of Facts ¶ 51.

Banning wine shipments by out-of-state retailers cannot advance public health and safety when they pose no threat to begin with.

Second, the evidence shows that there is a reasonable and workable nondiscriminatory alternative: a licensing system requiring out-of-state retailers to get a permit, consent to jurisdiction, and abide by regulations that limit sales volume, require shipping reports and tax payments, allow audits, and require the use common carriers that verify age on delivery.

- Illinois already uses the permit system to monitor shipments by out-of-state wineries. Facts ¶ 46.
- The Supreme Court has endorsed the permit system as a reasonable nondiscriminatory alternative. *Granholm,* 544 U.S. at 491-92 ("protecting public health and safety, and ensuring regulatory accountability [can] be achieved through the alternative of an evenhanded licensing requirement").
- The National Conference of State Legislatures has endorsed the permit system. Stmt. of Facts ¶ 47.
- The Federal Trade Commission has endorsed permits as preferable to a total ban. Stmt. of Facts ¶ 47.
- Other states use permits to regulate interstate retail wine shipping. Stmt. of Facts ¶ 47. There is no evidence of any public health or safety problems and the Defendants admitted in discovery that they are unaware of any actual incidents in the past three years in which wine shipped to a consumer by a licensed winery caused or was a significant factor in an alcohol-related public health or safety issue, including traffic accidents, crime, workplace absenteeism, or domestic violence. Stmt. of Facts ¶¶ 37, 42, 43.

Whether it is reasonably necessary for Illinois to ban out-of-state retailers from shipping wine boils down to whether Illinois can identify any important public safety enforcement activity that requires an in-state presence. We can eliminate bureaucratic reasons such as tracking sales, conducting audits, and collecting taxes because a retailer does not have to be physically present in the state to submit documents. They "can be mailed, faxed, or submitted via e-mail" under an "evenhanded licensing requirement." *Granholm,* 544 U.S. at 492. Illinois already authorizes retailers to keep electronic records outside the state. 235 ILCS 5.6-10.

We can also eliminate the need to conduct physical inspections and enforcement activities. Illinois rarely conducts any on-site enforcement activities at in-state retailers in the first place, and conducts none aimed at detecting shipments to underage persons, tainted or unsafe wine, or any other public health or safety issue associated with wine shipping. Facts ¶ 45. Illinois does not even require retailers to maintain records of persons to whom it shipped wine or what was shipped that could be reviewed in an on-site inspection. 235 ILCS 5/6-10. See also 11 Ill. Admin. Code 100.260 (retailers only required to keep financial records available). The only on-site enforcement activity authorized by statute are sting operations to detect *on-site* sales to underage persons. 235 ILCS 5/6-16.1.

Illinois already uses an evenhanded licensing system to monitor shipments by out-of-state wineries and has not experienced any problems. Stmt, of Facts ¶ 46. Indeed, Illinois regulates all aspects of liquor distribution through licenses. *Lebamoff*, 909 F.3d at 855; 235 ILCS 5/5-1 (list of 36 alcohol licenses). The State has no concrete evidence to show that the permit and reporting system which it uses everywhere else would suddenly stop being effective in this one situation.

The absence of evidence is dispositive. When a state asserts that it is banning interstate commerce in order to protect the public but "the record is devoid of any 'concrete evidence' showing that the [law] actually promotes public health or safety; nor is there evidence that nondiscriminatory alternatives would be insufficient to further those interests," the ban is unconstitutional. *Tenn. Wine,* 588 U.S. at 540.

**V. Remedy**

The choice of remedy and scope of an injunction is a matter for the sound discretion of the District Court, *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 843 (7th Cir. 2012), including in Constitutional cases. *Preston v. Thompson,* 598 F.2d 300, 303 (7th Cir. 1978). Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy

to fit the nature and extent of the constitutional violation and provide relief to the Plaintiffs. *Al-Alamin v. Gramley*, 926 F.3d 680, 685 (7th Cir. 1991). In a case like this, where the plaintiffs have been denied the right to engage in interstate commerce, the presumptively correct remedy is an injunction extending those privileges to the aggrieved parties. *See Califano v. Westcott*, 443 U.S. 76, 89-90 (1979). This court should:

1. Declare 235 ILCS 5/6-29.1(b) unconstitutional as applied to prohibit out-of-state wine retailers from shipping wine to consumers, and enjoin the Defendants from enforcing it.
2. Declare 11 Ill. Adm. Code 100.480 unconstitutional as applied to prohibit consumers from receiving shipments of wine from out-of-state retailers and enjoin the Defendants from enforcing it.
3. Declare 235 ILCS 5/6-2(a), 235 ILCS 5/3-14, 235 ILCS 5/7-1, unconstitutional as applied to require a retailer to have a local liquor license and/or a physical presence in Illinois in order to obtain an off-premises retail license, and enjoin the Defendants from enforcing them.

Plaintiffs do not seek a remedy that would require the defendants to allow unlicensed, unregulated or untaxed wine shipments. Out-of-state retailers, including Full Pull Wines, are perfectly happy to obtain state licenses and comply with their conditions, if state officials will make them available. Stmt. of Facts ¶¶ 8, 18. The court should therefore also enjoin the Defendants to issue off-premises retail licenses to qualified out-of-state retailers.

November 8, 2024

Respectfully submitted:

s/ James A. Tanford
James A. Tanford
Robert Epstein
EPSTEIN SEIF PORTER & BEUTEL, LLP
50 S. Meridian St., Ste 505
Indianapolis IN 46204
317-639-1326
Fax: 317-638-9891

Rdepstein@aol.com
tanford@indiana.edu

Edward R. Moor
Moor Law Office PC
53 W. Jackson Blvd., Suite 1527
Chicago IL 60604
erm@moorlaw.net
(312) 726-6207