UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TIMOTHY FREEHAN, *et al.*,
    Plaintiffs

v.

CYNTHIA BERG, *et al.*,
    Defendants

No. 22 CV 4956

Judge Jeremy C. Daniel

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on cross-motions for summary judgment. [108], [112]. The plaintiffs, out of state wine retailer Full Pull Wines, LLC and Illinois wine consumers Timothy Freehan and Joseph Grody,[1] challenge the constitutionality of the state's liquor laws which prevent out-of-state retailers from delivering alcohol to in-state consumers. They allege this violates the dormant commerce clause of the U.S. Constitution. The defendants, Illinois Liquor Control Commission members[2] and the Wine and Spirits Distributors of Illinois[3] assert the challenged laws are legitimate exercises of state power under the Twenty-First Amendment.

For the reasons given in this opinion, the Court concludes that the challenged liquor laws are constitutional and grants summary judgment in favor of the defendants.

---

[1] Plaintiff Austin Marcum was dismissed with the consent of all parties. (R. 52)
[2] Commissioner and Chairman of the Illinois Liquor Control Commission Cynthia Berg, along with Thomas Gibbons, Patricia Pulido Sanchez, Melody Spann Cooper, Julieta LaMalfa, Brian Sullivan, Donald O'Connell, and Steven Powell.
[3] Intervening by right. (Text Order of 7/5/2022.)

## BACKGROUND

Illinois, as most states, regulates alcohol commerce using a "three tier" system. (R. 126 (Plaintiffs' Response to Defendants' Statement of Facts ("Pls.' Resp. DSOF")) ¶ 11.)[4] At a high level, the system functions as follows. The state licenses three types of merchants: producers, distributors, and retailers. (*Id.*) Producers are permitted to sell alcohol to distributors. 235 ILCS 5/5-1(a). Distributors are permitted to purchase alcohol (from both in and out of state), wholesale it, store it, and sell it to licensed retailers. 235 ILCS 5/5-1(b). Retailers are permitted to purchase alcohol products from licensed distributors and sell them to Illinois consumers for consumption. 235 ILCS 5/5-1(d); (*see also* Pls.' Resp. DSOF ¶ 12.) Retailers may ship alcohol to in-state consumers. (Pls.' Resp. DSOF ¶ 17.) These licenses are predominately exclusive; with certain exceptions producers cannot distribute or retail, and so on. (*Id.* ¶ 12.)

To obtain a retail license, retailers must maintain a physical presence in Illinois. (R. 123 (Defendants' Response to Plaintiff's Statement of Facts ("Defs.' Resp. PSOF") ¶ 21.) This requirement, paired with the necessity of a retail license to ship alcohol to in-state consumers, creates the conditions to which the plaintiffs object: out-of-state alcohol sellers cannot ship to customers in Illinois and Illinois consumers cannot order alcohol from out-of-state retailers. (*Id.* ¶¶ 22–25.)

Plaintiffs Freehan and Grody are Illinois wine collectors. (*Id.* ¶¶ 1–2.) Many of the rare wines they seek to purchase are not sold by Illinois retailers. (*Id.* at ¶¶ 28–

---

[4] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

2

31.) To access these rare wines, the plaintiffs would have to take time off work, travel to out-of-state retailers stocking the desired wines, and bear the expense and difficulty of transporting them home. (*Id.* at 33.) These bottles, which can cost thousands of dollars each, must be "shipped under temperature-controlled conditions." (*Id.* ¶ 31.) Both plaintiffs declare that, if allowed, they would purchase wines from out-of-state retailers. (R. 110-2 ¶ 9; R. 110-3 ¶ 9.)

Plaintiff Full Pull Wines ("Full Pull") is a Washington company that operates a licensed wine store in that state. (Defs.' Resp. PSOF ¶ 12.) The owner of Full Pull is a highly respected wine writer, and through his store, maintains an extensive, loyal, and nationwide customer base that trusts him to provide wine recommendations. (*Id.* ¶ 13–14.) Due to Illinois law, Full Pull is unable to sell to the subset of these customers who reside in the state, and has had to decline sales from Illinois residents. (*Id.* at 14–15.)

However, Full Pull does occasionally ship to Illinois residents through a third party. (R. 126 (Plaintiffs' Response to Defendant's Statement of Facts ("Pls.' Resp. DSOF") ¶¶ 22–24.) It does so by transferring title to the wine to the buyer in Washington, then routing the wine to Illinois by way of California using a third-party shipper. (*Id.*) The parties agree this process costs more than directly shipping the wines from Full Pull to an Illinois resident, and Full Pull does not pay Illinois taxes or report sales to Illinois officials. (*Id.*) The parties also agree that Full Pull would be allowed to open an Illinois retail location, acquiring the necessary license in the

3

process, but does not wish to do so. (*Id.* ¶ 25.) If permitted, Full Pull would sell and ship wine directly to Illinois consumers. (*Id.* ¶ 6.)

## LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is 'material' if it is one identified by the law as affecting the outcome of the case." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 722 (7th Cir. 2015). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the Court "construe[s] all facts and draw[s] all reasonable inferences in the nonmoving party's favor, but the moving party may prevail 'by showing an absence of evidence to support' the nonmoving party's claims." *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (quoting *Tyburski v. City of Chi.*, 964 F.3d 590, 597 (7th Cir. 2020)). While the Court must give the nonmoving party "the benefit of reasonable inferences from the evidence," it does not construe "speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016). "Where, as here, the parties file cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made." *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017) (citing *Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015)).

4

ANALYSIS

I. PRIOR DECISIONS ON THREE-TIER ALCOHOL REGULATORY SYSTEMS

States are normally forbidden from discriminating against interstate commerce, but the Twenty-First Amendment grants states the power to "maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use." *Granholm v. Heald*, 544 U.S. 460, 484 (2005). Accordingly, section 2 of the amendment prohibits the "transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof." This section means that states may impose discriminatory regulatory schemes on alcohol sales if they "advance[] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Granholm*, 544 at 489 (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988)).

In *Granholm*, the Supreme Court invalidated New York and Michigan laws that prevented out-of-state, but not in-state, wineries from selling direct-to-consumer without passing through their three-tier systems for alcohol distribution. *Id.* at 473–75. The Court concluded that section 2 of the Twenty-First Amendment does not allow states to regulate the direct shipment of wine on terms that discriminate in favor of in-state producers. *Id.* at 476. New York and Michigan argued their laws functioned to reduce underaged drinking and enable tax collection, but the Court rejected these rationales. *Id.* 489–92.

Following *Granholm*, an Indiana wine store, its owner, and a would-be customer, challenged the same Illinois laws at issue here. *Lebamoff Enters., Inc. v.*

5

*Rauner*, 909 F.3d 847, 849-50 (7th Cir. 2018). The district court dismissed the suit as a futile challenge to the three-tier system altogether. *Id*. The Seventh Circuit reversed. The circuit concluded that plaintiffs alleged a viable dormant commerce clause violation, and further concluded that "limiting licenses to in-state storefronts . . . once the license allows a store to ship product anywhere within the state, [yet] refusing to extend that privilege to out-of-state businesses is facially discriminatory." *Id*. at 852–53. Thus, the district court should have "asked whether Illinois has justified requiring an in-state presence for retailers now that it allows state-wide mail-order sales," an "inquiry [that] is ill-suited for the motion to dismiss stage." *Id*. at 855–56. After remand, *Lebamoff Enterprises* never reached an answer to that question; the plaintiffs went bankrupt or fell ill, leading to a premature dismissal. (R. 109 at 2 n.3.)

The Supreme Court next returned to section 2 in 2019, invalidating Tennessee's requirement that applicants for retail liquor store licenses must have resided in the state for two years before applying. *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 539 (2019). Again, the Court determined that discriminatory alcohol regulations were only permissible under section 2 if justifiable on "public health or safety measure or on some other legitimate nonprotectionist ground," but "where the predominant effect of a law is protectionism, not the protection of public health or safety, it is not shielded by § 2." *Id*. at 539–40.

After *Tennessee Wine*, the Seventh Circuit took up another challenge to alcohol shipping laws. In *Chicago Wine Co. v. Braun,* the court affirmed the constitutionality

6

of an Indiana law preventing "retailers of alcoholic beverages located outside the State from shipping wine to Indiana consumers." 148 F.4th 530, 531 (7th Cir. 2025). There was no majority opinion in *Chicago Wine* because "Judge Kanne, a member of the panel at the time of argument, died" before the opinion was released, and the other members split as to their reasoning. *Id.* at 531 n.*. Judge Easterbrook would have held the challenged Indiana law did not discriminate against out-of-state retailers, while Judge Scudder concluded the law did discriminate, but was nevertheless justifiable under *Tennessee Wine. Id.* at 534, 544–45. Because *Chicago Wine* was decided after the cross-motions for summary judgment in this case were fully briefed, the Court invited supplemental briefing on its impact. (R. 144.)

Similar challenges to other states' prohibitions on the shipment of alcohol from out of state merchants directly to consumers have fared no better in the aftermath of *Tennessee Wine*. The Third, Fourth, Sixth, Eighth, and Ninth Circuits have all rejected these challenges, finding either that the restrictions were not discriminatory,[5] or were justifiable elements of a state's three-tiered alcohol regulatory framework.[6]

Only the First Circuit has reversed a district court's decision upholding state liquor laws. There, plaintiffs challenged a Rhode Island requirement restricting retail

---

[5] *Sarasota Wine Mkt., LLC v. Schmitt*, 987 F.3d 1171, 1184 (8th Cir. 2021) ("[I]impose[ing] the same licensing requirements on in-state and out-of-state retailers . . . do not discriminate against out-of-state retailers and wholesaler").

[6] *Jean-Paul Weg LLC v. Dir. of N.J. Div. of Alcoholic Beverage Control*, 133 F. 4th 227, 231 (3d Cir. 2025); *B-21 Wines, Inc. v. Bauer*, 36 F.4th 214, 216 (4th Cir. 2022); *Lebamoff Enters. Inc. v. Whitmer*, 956 F.3d 863, 867 (6th Cir. 2020); *Day v. Henry* __ F.4th __ (9th Cir. 2025) (*en banc*).

7

liquor licenses to in-state individuals and businesses. *Anvar v. Dwyer*, 82 F.4th 1, 5 (1st Cir. 2023). The First Circuit concluded this was discriminatory and remanded for the taking of additional evidence on whether Rhode Island's policy could be justified as advancing a legitimate local purpose that could not be adequately served by reasonable nondiscriminatory alternatives. *Id.* at 9–10.

## II. THE PLAINTIFFS' CASE FOR RELIEF FROM ILLINOIS' THREE-TIER SYSTEM

### A. Standing

The Court begins, as it must, with the question of standing. *Tierney v. Advoc. Health & Hosps. Corp.*, 797 F.3d 449, 450 (7th Cir. 2015) (standing is a "threshold issue"). The defendants argue that the plaintiffs do not have standing because their requested relief is unavailable; the Court cannot clear the way for wine shipment from Washington to Illinois. (R. 113 at 28.) The laws of both states allegedly block delivery of alcohol from out of state, even if the challenged prohibitions are struck down. (*Id.* at 29) Starting with Illinois law, the defendants identify the "come to rest" requirement as prohibitive. (*Id.*) This provision requires that imported alcohol must be "off-loaded" from the vehicle that brought it into the state and stored at the "licensed premises of the importing distributor." 235 ILCS 5/6-8. Therefore, alcohol shipped to Illinois consumers from an out-of-state retailer must take the following journey: from manufacturer or producer to Illinois distributor, where it comes to rest, then to out-of-state retailers, then back into the state to the end consumer. (R. 113 at 29.) But, according to the defendants, Illinois distributors cannot sell to out-of-state

8

retailers, so even if Full Pull could ship to Illinois, it could not buy shippable alcohol, rendering relief unavailable to plaintiffs. (*Id.*)

The defendants also argue that a similar Washington law prevents Full Pull from buying from Illinois distributors, but they have implicitly conceded the issue. According to the defendants, Washington retailers can only buy from Washington distributors. (*Id.* at 29–30 (citing RCW 66.44.160.)) In response, the plaintiffs argue that RCW 66.24.179 permits licensing Washington wine retailers to "deliver . . . to lawful purchasers outside the state." (R. 124 at 3.) The defendants assert this is a "*non sequitur*" but do not dispute that plaintiffs are correct on Washington law. (R. 129 at 16.) From this, the Court concludes that it does not need to address Washington law further to potentially grant the plaintiffs the relief they seek.

Returning to Illinois, if the Court decides Illinois' alcohol regulations are unconstitutional, it is not limited to striking down only the explicitly challenged provisions. *See Chi. United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 948 (7th Cir. 2006) ("Rule 54(c) of the civil rules entitles a prevailing plaintiff to the relief proper to his claim even if he did not request that relief . . . ."). The Court may, if it decides the plaintiffs prevail on the merits, clear the way for Full Pull to ship into Illinois, striking down whichever elements of Illinois' regulatory scheme stand in the way. As such, the Court may grant the plaintiffs the relief they seek, and it follows that the plaintiffs do have standing. Accordingly, the Court will proceed to the merits.

### B. Merits

Turning to the merits, the Court asks three questions. First, is the challenged law discriminatory? *Lebamoff Enters.*, 909 F.3d at 851. Second, can the law be

9

justified on a legitimate, non-protectionist ground? *Tenn. Wine*, 588 U.S. at 539. Third, can the regulatory objective be "easily [] achieved by ready alternatives," *id.* at 540, or, as the Supreme Court has also put it, does the regulatory regime "advance[] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives"? *Granholm*, 544 U.S. at 489 (quoting *New Energy Co. of Ind.*, 486 U.S. at 278.)

### 1. The Challenged Law Is Discriminatory

The Court concludes that the challenged law is discriminatory. Under Illinois law, an in-state alcohol retailer can ship to consumers statewide, but an out-of-state retailer cannot. (Defs.' Resp. PSOF ¶ 22–25.) The defendants urge the Court to follow Judge Easterbrook and conclude that, because the law "impose[s] costs equally on in-state and out-of-state . . . businesses [it] is nondiscriminatory." *Chi. Wine Co.*, 148 F.4th at 533 (Easterbrook, J., concurring). But the Court finds Judge Scudder's concurrence more persuasive; he reasoned that the Supreme Court has classified similar regulatory regimes as the one at issue here as discriminatory. *Id.*, 538–39 (Scudder, J., concurring). The Court also views itself bound by the Seventh Circuit's prior conclusion that this law "distinguishes between in-state and out-of-state parties for purposes of the right to ship to Illinois residents" and therefore is "facially discriminatory." *Lebamoff Enters.*, 909 F.3d at 852–53.

### 2. The Challenged Law Can Be Justified on Legitimate Nonprotectionist Grounds

At step two, the defendants must offer some evidence that "the challenged requirement can be justified as a public health or safety measure or on some other

legitimate nonprotectionist ground." *Tenn. Wine*, 588 U.S. at 539. This evidence must be "concrete." *See id.* at 540 ("[T]he record is devoid of any 'concrete evidence'" that the challenged requirements "promotes public health or safety." (quoting *Granholm*, 544 U.S. at 490)); *see also Jean-Paul Weg LLC*, 133 F.4th at 236–37 (upholding conclusion that challenged requirements had "concrete evidence" justifying them); *Anvar*, 82 F.4th at 8 (reviewing challenged requirements for concrete evidence). Here, the defendants offer several rationales to defend the challenged laws.

First, licensing. To obtain a retail license in Illinois, retailers must first pass a background check and premise inspection by local authorities. (Pls.' Resp. DSOF ¶ 29.) The defendants argue that the state of Illinois does not have sufficient employees in its licensing division to perform the required background checks and inspections on licensees in states where state, not local, agencies perform these functions. (R. 113 at 6.) This is not a compelling argument in light of *Granholm*. There, the Court rejected similar arguments of "regulatory accountability" because "improvements in technology have eased the burden of monitoring out-of-state wineries. Background checks can be done electronically. Financial records and sales data can be mailed, faxed, or submitted via e-mail." 544 U.S. at 492.

Next, the defendants argue that funneling all alcohol sold in the state through wholesalers is a "core component" of Illinois' regulatory scheme. (R. 113 at 6.) Restricting alcohol sales to in-state retailers allows the state to effect bans on "certain alcohol products that it has determined to be unsafe or that target underage drinking." (*Id.* at 7.) Such products include "alcopop" products which are particularly

11

attractive to underage drinkers, as well as improperly labelled caffeinated-alcohol products. (*Id*.) According to the defendants, the three-tiered system also allows the state to control the price of alcohol as a tool to temper consumption and demand in the state. (*Id*. at 9.) Last, the defendants argue that the threat of license revocation is an effective tool to enforce Illinois state laws and regulations. An in-state retailer whose license is revoked can no longer sell alcohol and is stuck with unsellable product. (*Id*. at 10.) This potential does not exist for out-of-state retailers, who can sell their products locally even if they lose the privilege of selling into Illinois. (*Id*.)

The defendants support their arguments with affidavits from Kenneth Williams, a Liquor Control Supervisor with the Illinois Liquor Control Commission ("ILCC"), (R. 115-1 at 139); Dusanka Marijan, a license administrator with the ILCC, (R. 115-1 at 151); and the expert report of William C. Kerr, Ph.D., (R. 115-1 at 160.) Williams and Marijan aver as to the way the three-tiered system allows them to easily and effectively monitor the flow of alcohol into and throughout Illinois, and the difficulty that monitoring out-of-state retailers would entail. For example, in Williams' affidavit, he states that all sales to retailers from wholesalers are tracked on an electronic database for tracing and taxation purposes. (R. 115-1 at 142.) Using these records, state inspectors can conduct physical onsite inspections to see if retailers are obtaining alcohol from unlicensed sources. (*Id*. at 143.) The ILCC aspires to inspect every licensee twice a year, but due to staff shortages, inspections occur once a year, totaling "nearly 12,000" inspections a year (*Id*. at 142.) Williams

12

estimates one in twenty inspections discovers retailer violations of Illinois alcohol sourcing laws. (*Id*. at 143)

Williams goes on to state that the ILCC would face "extreme[] difficult[ies]" monitoring and regulating out-of-state retailers, due to "geographic, budgetary, [and] manpower" constraints. (*Id*. at 144.) He also discusses the effectiveness of the ILCC's covert, in-person, enforcement efforts to combat underage drinking, which are reportedly "extremely effective." (*Id*. 146–47.) The plaintiffs largely admit the accuracy of Williams' and Marijan's statements as to the current state of affairs while disputing the impacts of their sought policy change. (Pls.' R. DSOF ¶¶ 36–50.) The Court finds these regulatory arguments distinct from the ones rejected in *Granholm* because they cannot be eased by technological advances. Regulators cannot check electronically if a store is selling improperly sourced alcohol, nor electronically see if a store will sell to underaged buyers. Physical inspection is required, and therefore these concerns provide a concrete basis for Illinois' regulatory scheme.

Turning to Dr. Kerr's report, he opines on the economic effects of alcohol taxation. According to Dr. Kerr, the state of Illinois generates approximately $280 million annually from excise taxes on alcohol, which are approximately five or six times higher than those of neighboring states. (R. 115-1 at 173–75.) These taxes serve a number of public health and safety goals in the state by increasing the price of and reducing the demand for alcohol. (*Id*. at 176.) According to Dr. Kerr, the economic literature on alcohol taxation repeatedly finds that changes in alcohol taxes cause commensurate changes in drunk driving, domestic violence, and alcohol related

13

mortality. (*Id*. at 176–78.) For example, a statewide increase in alcohol taxes reduced in-state drunk driving incidents by a quarter. (*Id*.)

The plaintiffs attempt to challenge Dr. Kerr's conclusions with little more than attorney arguments rooted in in-brief calculations. (*See* R. 124 at 15.) For example, the plaintiffs argue that the impact of Illinois taxes on a bottle of wine are at most 2% of the price, and therefore it is "inconceivable" that Dr. Kerr's conclusions are correct. (*Id*.) The Court is not inclined to credit counsel in this matter over Dr. Kerr's expertise and data, especially when Dr. Kerr's report on this matter has been deemed admissible, and the plaintiffs' expert reports here have been largely excluded. (*See* R. 105 (denying the plaintiffs' motion to exclude Dr. Kerr's expert report, but excluding the plaintiffs' expert reports on the health and safety impacts of alcohol taxation and admitting only those parts relevant to the income generated by those taxes).)

In sum, the defendants have put forth sufficient concrete evidence to support the three-tier system on legitimate, non-protectionist ground. These grounds are 1) the central control provided by the three-tiered system over alcohol pricing and sales in the state, 2) enabling that control by permitting efficient oversight of licensed alcohol sellers (including both assurances that sellers obtain alcohol through the proper channels and sell to of-age buyers), and 3) the public health and safety benefits obtained through Illinois' ability to control the price of, and therefore the demand for, alcohol in the state. This provides ample public safety grounds on which Illinois justifies its three-tiered system, and the state compellingly argues that a Court-imposed restructuring, as the plaintiffs request, would seriously undermine the

14

ability of state regulators to maintain this system. In drawing these conclusions, the Court is expressly following Judge Scudder's concurrence in *Chicago Wine*, where he concluded that Indiana's law, similar to the law at issue here, could be justified because it allowed that state to ensure compliance with state law, promote temperance, and combat underage drinking. 148 F. 4th at 541–43.

### 3. No Easy Alternatives Exist

The Court now considers whether there are easy, non-discriminatory alternatives that would allow the state to preserve its interests. *See Tenn. Wine*, 588 U.S. at 540. There are not. The plaintiffs identify a number of ways in which these state interests could be met outside of the three-tiered system but fail to persuade the Court they would be easy. The plaintiffs argue that Illinois can tax out-of-state alcohol when it is shipped into the state, and require shippers to post bonds to ensure the collection of those taxes. (R. 124 at 17). Furthermore, the plaintiffs argue that the ILCC can conduct audits and inspections of extra-state shippers to ensure compliance with Illinois law. (*Id.*) These actions may be possible, but the Court is not convinced that they would be easy. The plaintiff is effectively arguing that the Court should compel the state to stand up a whole external taxation and inspection arm of its Liquor Control Commission, to address on an ad-hoc basis any alcohol seller who wished to ship into Illinois from out of the state. This would be a quintessential exception that would swallow the rule of the three-tiered system, and it is neither an easy alternative to the existing regulatory scheme in the state nor a reasonable nondiscriminatory alternative.

The Court is further convinced that the requested relief would not be an easy alternative to the existing alcohol regulations by the potential necessity to strike down more than just the expressly challenged law. As discussed above when considering whether the plaintiffs have standing, current law bars Illinois wholesalers from selling to out of state, and restricts Illinois retailers from selling alcohol not obtained from Illinois wholesalers. (R. 113 at 29.) Granting the plaintiffs the relief they seek would require doing away with these provisions of the Illinois regulatory scheme as well, doing further damage to the three-tiered system with unclear effects. Again, this is not an easy alternative to the current state of affairs.

Accordingly, the Court finds that while Illinois' rules on shipping alcohol to consumers do discriminate against out-of-state sellers, the regulatory scheme is nevertheless justifiable on public health and regulatory efficiency grounds, and no "easy" alternative exists. As such, summary judgment is appropriate for the defendants.

## CONCLUSION

The defendants' motion for summary judgment [112] is granted, and the plaintiffs' motion for summary judgment [108] is denied. Civil case terminated.

Date: September 25, 2025

JEREMY C. DANIEL
United States District Judge